UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

PATRICK UZOMBA,

       Plaintiff,

v.                                        CIVIL NO.  SA-12-CA-1193-XR

CITY OF SAN ANTONIO;
SAN ANTONIO POLICE DEPARTMENT
CHIEF WILLIAM MCMANUS;
OFFICER FNU SORRELL;
SERGEANT FNU RAWSON;
OFFICER FNU RAMOS;
OFFICER FNU ARNOLD;
OFFICER FNU DUPREE;
OFFICER FNU DANIELS;
OFFICER THOMAS SMITH;
SERGEANT FNU GUZMAN;
OFFICER FNU SALAZAR;
UNKNOWN OFFICER WITH RANK OF
LIEUTENANT; and
"UNKNOWN SAPD, EAST SIDE
OFFICERS;"

       Defendants.

ORDER

This order addresses plaintiff's motion for leave to proceed in forma pauperis (IFP) on a

proposed civil rights complaint naming thirteen defendants.

## I.  SUMMARY OF PROCEDURAL HISTORY and PLAINTIFF'S ALLEGATIONS

**A.**    **This Case**

Plaintiff Patrick Uzomba ("plaintiff" or "Uzomba") initiated this case on or about December

13, 2012, when plaintiff filed his sworn application for leave to proceed IFP and tendered his

proposed complaint.[1]  Plaintiff's IFP application represents plaintiff is not employed; was last employed in March 2012 when he was "self" employed earning an amount(s) not specified; and has no money, no savings, and no assets.[2]  At the time of initiating the suit, plaintiff was incarcerated at the Bexar County Adult Detention Center ("BCADC").[3]  On April 19, 2013, plaintiff filed a change of address form to indicate he had moved from the BCADC to a private residence address in San Antonio.[4]  Plaintiff provided no updated IFP affidavit or current statement as to his ability and intention to become employed or statement as to how he is supporting himself, now that he is no longer incarcerated.

Plaintiff's eleven-page handwritten complaint names *thirteen* defendants for various violations of plaintiff's constitutional rights spanning an uncertain period of time.[5]  The Court's February 1, 2013 order to show cause contained a rather detailed summary of plaintiff's allegations:

> Plaintiff alleges the following.  Plaintiff states he sued the city and Officer Ramsey Garcia in this Court, which the city settled.  Plaintiff does not provide the cause number, but it was SA-08-CA-416.  Plaintiff was appointed counsel in that case and in SA-09-CA-20.
> Plaintiff claims Sorrell, Smith, and other officers at the East Side Substation were angry about the lawsuit.  He states they vowed Plaintiff would not enjoy the money.  He states an officer follows him around each shift – Sorrell on the first shift, Officer Dupree on the second shift, and Officer Thomas Smith on the third shift.  He asserts they followed him and threatened people.  They told people that Plaintiff sued the city and police.  They harassed people and businesses that associated with Plaintiff.
> Officer Thomas Smith was Ramsey Garcia's partner.  Smith once told

---

[1]  Docket nos. 1, 2.

[2]  Docket no. 1 at 2-4.

[3]  Id. at 4.

[4]  Docket no. 5.

[5]  Docket no. 2, attachment 1 ("proposed complaint").

2

Plaintiff, "You will die on this street one day probably by this gun."

Plaintiff contends the stops by the police were retaliatory. He claims the East Side substation officers had all questioned Plaintiff about the lawsuit and about when the settlement money was due. They vowed that Plaintiff would not enjoy the money and that they would not forget Officer Ramsey Garcia, one of the Defendants in the lawsuit.

On September 6, 2011, SAPD Officer Sorrell was arresting someone. Plaintiff and a friend walked to a store across the street from the arrest. The friend went into the store, and Plaintiff stayed outside. Sorrell left the arrested person handcuffed, and Sorrell ran across the street, pulling his gun and yelling. Sorrell grabbed Plaintiff, handcuffed Plaintiff, and shook Plaintiff. Sorrell took everything out of Plaintiff's pockets, and he took everything out of Plaintiff's wallet. Sorrell looked inside Plaintiff's pants and underwear. Plaintiff asserts Sorrell lacked probable cause and his actions were in retaliation for Plaintiff's suit against the city and Officer Garcia.

Plaintiff went to SAPD internal affairs to complain about Sorrell, but Sergeant Rawson refused to take the complaint. Rawson ordered Plaintiff out of the office. As Plaintiff got up to leave, Rawson came around the desk, and he used his stomach to bump and shove Plaintiff. Plaintiff walked to the door, and Rawson hit the back of Plaintiff's head with a closed fist.

Plaintiff complained about Sorrell and Rawson to an SAPD internal affairs lieutenant, but the lieutenant said the officers acted appropriately. Plaintiff complained to SAPD Chief McManus. He also condoned and approved the acts, stating the officers were doing their job and were trying to control drug trafficking on the East Side. Plaintiff asserts McManus and city have a deliberately indifferent policy of training police officers regarding the proper handling of arrestees. Plaintiff contends McManus failed to act, even though he had knowledge of the wrongs. Plaintiff states the city and McManus put in place and enforce unconstitutional ordinances regarding the stop and search of citizens for just standing, sitting, talking, and greeting each other.

In December 2011, SAPD Officer Ramos stopped and handcuffed Plaintiff without probable cause. Plaintiff was just walking on the sidewalk. The temperature was below freezing. Ramos removed most of Plaintiff's clothing and left Plaintiff standing barefoot and in his underwear for over forty-five minutes.

On February 1, 2012, Plaintiff parked his car in a motel parking lot. Two SAPD patrol cars pulled up. Officer Arnold ordered Plaintiff out of the [car] and immediately handcuffed him. Officers lacked probable cause, and they did not have a warrant. Arnold took everything out of Plaintiff's pockets. Arnold searched the car and took over $12,000 from a bank envelope, which Plaintiff states was from the lawsuit settlement check he had just cashed. Arnold strip-searched Plaintiff and left Plaintiff undressed in the cold for over thirty minutes. Arnold and other officers tore the car interior and ripped out some wires. Officers smashed an ipod, iphone, headsets, laptops, stereo systems, a bass guitar, and a musical keyboard. Arnold had the car towed because of no insurance. However, there was insurance. At the

impound yard, the [car] would not start, and it had to be towed away and repaired.

Also on February 1, 2012, hours after the incident in the motel parking lot and after Plaintiff recovered the car from the impound yard, Plaintiff was stopped by four or five other patrol cars.  Officers searched Plaintiff and ripped up the car's interior, trunk, electric wire, electric seat, mirror, sunroof, the sound system, fenders, signal lights, hood, and the gas and brake pedals.  Officers took over $14,000 and Plaintiff's ID.  An officer took off the handcuffs and told Plaintiff he could leave.  Plaintiff asked for his ID and money.  He was told by officers he should leave before the officers arrested him and towed his car.  He was also told that a lot worse could happen.  The car was put back enough to drive at a speed of about twenty miles per hour.  Plaintiff contends the East Side officers conspired to take Plaintiff's settlement money.

On February 5, 2012, Officer Daniels stopped and handcuffed Plaintiff.  Daniels searched Plaintiff and his car.  Daniels asked Plaintiff to work with SAPD to catch drug dealers, threatening to have Daniels's car towed if he did not agree to help.   Daniels took Plaintiff's $3000, cellphones, ipod, laptop, eyeglasses, medication, bass guitar, amplifier, and other musical equipment.  Plaintiff did not comply with Daniels's request, and Daniels had Plaintiff's car towed away.

On June 5, 2012, Plaintiff was in a car accident.  He was put in an ambulance.  Officer Dupree boarded the ambulance and searched Plaintiff's pockets.  Dupree said he was looking for drugs and crack cocaine.

On August 25, 2012, Officer Smith paid a drug user to plant crack cocaine on Plaintiff.  The informant left two crack pipes about eight feet from Plaintiff, and the informant kept the crack cocaine.  Smith was disappointed and angry.  He slapped Plaintiff's face.  Smith falsely arrested Plaintiff for the crack pipe, and Smith later discovered that Plaintiff had a warrant for a traffic ticket.  At the jail, Smith denied Plaintiff's medically prescribed walking cane and some of Plaintiff's medication.  At the magistrate court, Smith loudly told everyone present how Plaintiff sued the city and Officer Garcia.  Smith said he vowed not to forget.  In response to a question from Plaintiff, Smith admitted the situation was personal and that it was a vendetta and a grudge.

Plaintiff contends that because of Smith, Detention Sergeant Guzman assaulted Plaintiff and denied medical treatment.  Guzman inflicted injuries to Plaintiff's head, back, and knee.  Guzman dragged Plaintiff across the floor.

On November 10, 2012, SAPD Officer Salazar stopped, handcuffed, and searched Plaintiff without probable cause.  Apparently, Plaintiff was out of jail by then.

Plaintiff also contends the city is deliberately indifferent about the conditions of water manholes and covers.  He claims he stepped into a manhole in March 2012, he suffered serious injuries, and he was treated for three months.  Plaintiff was told by the San Antonio Water System that SAWS workers do not always lock the manhole covers, and people steal the covers.  Plaintiff has discovered that one out of

five citizens suffer these injuries.[6]

The Court's nine-page order to show cause notified plaintiff of various grounds that would support the dismissal of his claims.  At the threshold, the order notified plaintiff, who was then incarcerated, that his request to proceed IFP could be dismissed because more than three of plaintiff's prior civil actions or appeals have been dismissed as frivolous, malicious or for failure to state a claim and plaintiff had not demonstrated he is "under imminent danger of serious physical injury."[7]

The order to show cause also notified plaintiff that his claims might be barred by Heck v. Humphrey if his civil claims for damages related to charges that might be pending against him.  The order specifically directed plaintiff to inform the Court as to the reason he was in jail at the time he filed the suit, the charges, the case number, and the result of the proceedings.[8]

The order also notified plaintiff that his complaint appeared to be frivolous and failed to state a claim for federal civil rights relief, reviewing the general elements of a § 1983 claim, the basic requirement that a party asserting a claim present "enough facts to state a claim to relief that is plausible on its face," raising the "right to relief above the speculative level" and discounting "labels and conclusions."[9]  The order to show cause identified several areas of concern, providing plaintiff

---

[6]  Docket no. 3 at 1-5.

[7]  Id. at 5.  Because plaintiff has now been released from custody, this ruling does not further address three strikes bar.

[8]  Id. at 6.

[9]  Id. at 6-8 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965-66, 1974 (2007); Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827 (1989)).

an opportunity to address them in his response to the order to show cause.[10]  For example, the order noted that plaintiff's complaint did not include a particularized statement of facts to show that a particular defendant was personally involved in the each of the actions of which plaintiff complains or was responsible for the policy or custom giving rise to the constitutional deprivation, notifying plaintiff that respondeat superior did not apply.[11]  Specifically, the order notified plaintiff that his "conclusory complaint does not allege facts that show Defendant McManus was personally responsible for the policy or custom giving rise to constitutional deprivations" nor did it state how ordinances were unconstitutional or explain how plaintiff allegedly violated an allegedly unconstitutional ordinance.[12]  The order notified plaintiff that he had not "alleged facts that would show Defendants McManus, Rawson, and the unknown Lieutenant from internal affairs violated Plaintiff's constitutional rights for failing to investigate Plaintiff's complaints."[13]  Plaintiff was advised that his complaint did not include facts regarding an alleged stop and search by Officer Daniels on February 5, 2012, and an alleged stop and search by Officer Salazar on November 10, 2012 sufficient to show a violation of plaintiff's constitutional rights.[14]  Plaintiff also was advised of the elements of a deliberately indifferent denial of medical care and directed to allege facts to show defendants Smith and Guzman denied him medical care in violation of his constitutional

---

[10]  Id. at 7 ("Plaintiff's complaint is frivolous and fails to state a claim for federal civil rights relief under 42 U.S.C. § 1983 and therefore is subject to dismissal for the following reasons.") (emphasis removed).

[11]  Id. at 7-8 (citations omitted).

[12]  Id. at 8.

[13]  Id.

[14]  Id. at 8-9.

rights.[15]  Finally, plaintiff was advised that his purported claim concerning defective manhole covers

on certain San Antonio public streets failed to allege how the city violated his constitutional rights.[16]

On February 28, 2013, plaintiff filed a ten-page, hand-printed response to the order to show

cause.[17]  The response includes seven headings: "§ 1915(g) issues;" "imminent danger;" "Chief

McManus constitutional violations;" "SAPD internal affairs;" "retaliation;" "SAPD Officers Daniel

and Salazar;" and "Manhole."[18]

**B.      Plaintiff's Other Cases in this Division**

According to the CM/ECF records of the Office of the District Clerk, plaintiff has filed six

other civil rights cases in the San Antonio Division of this Court.[19]  A brief, selective summary of

aspects of the prior cases is included to provide a context for some of the assertions plaintiff makes

in the proposed complaint and response to the Court's order to show cause in this case.  Stated

differently, plaintiff's proposed complaint and response to order to show cause in this case may refer

to matters already presented for decision in other cases.  To the extent plaintiff seeks to raise claims

in this case that are based on factual matters alleged in other cases and could have been asserted in

the other cases, plaintiff has not explained why he should be afforded another opportunity in this case

---

[15]  Id. at 9.

[16]  Id.

[17]  Docket no. 4.

[18]  Id.

[19]  Based on the District Clerk's CM/ECF records, plaintiff also has previously filed two prior civil rights cases in the Austin Division (A-02-CA-674-SS; A-03-CA-728-SS) and one prior civil rights case in the El Paso Division of this Court (EP-03-CA-77-DB).

to press his factual and legal averments.[20]

Most recently, on March 6, 2013, plaintiff filed a motion for leave to proceed IFP on a civil rights complaint against University Health System ("UHS") and individuals relating to health care provided to him at the Bexar County Adult Detention Center docketed as Uzomba v. UHS, et al., SA-12-CA-177-H.[21]  The Court denied plaintiff's motion for IFP and dismissed the claims and case and later denied plaintiff's motion for reconsideration and recusal.[22]  Noting that plaintiff was "a serial filer of pro se complaints" who "has previously been threatened with sanctions, and has been placed on the 'three strikes' list," the Court found that the allegations in plaintiff's "proposed complaint are insufficient to state a claim for relief under Section 1983."[23]  In his proposed complaint, plaintiff indicates he was arrested on November 19, 2012, but does not state why he was arrested or provide any other information about the status of the case[24]—an issue relating to plaintiff's failure to respond to the order to show cause in this case requiring plaintiff to provide information relevant to Heck v. Humphrey.[25]

---

[20]  The Court acknowledges that, in connection with the past handling of certain of plaintiff's claims, the Court has dismissed severable claims without prejudice to being raised in another case. Nevertheless, once plaintiff has had the opportunity to fully and fairly litigate a claim against a defendant he is properly precluded from re-litigating the same or similar claims against the same defendant or defendants that were known to plaintiff at the time of the earlier case.

[21]  SA-13-CA-177-H.

[22]  SA-13-CA-177-H, docket nos. 3, 5.

[23]  SA-13-CA-177-H, docket no. 3 at 1-2.

[24]  SA-13-CA-177-H, docket no 1, attached proposed complaint at 1.

[25]  By including this observation, the Court is not agreeing that the liberal construction of plaintiff's pro se submissions in this case includes the responsibility for the Court to comb plaintiff's other cases for relevant information.

According to the CM/ECF records, plaintiff's first case in this Division was filed on May 21, 2008 and docketed as Uzomba v. City of San Antonio, et al., SA-08-CA-416-XR. Plaintiff asserted civil rights claims against the City of San Antonio, San Antonio City Hall, SAPD Police Chief McManus, two SAPD officers, the SAPD Internal Affairs Department, UHS, VIA Metropolitan Transit System ("VIA"), Bexar County, three BCADC detention officers, and an attorney, William Orbelo.  Plaintiff's amended complaint alleged, among other things, that on February 14, 2007, December 6, 2007, and January 3, 2008, SAPD Officers arrested him without probable cause and on April 11, 2008, SAPD officers assaulted him.[26]   On November 20, 2008, the Court ordered service of Uzomba's amended complaint on the City of San Antonio and the SAPD officers for the above-noted claims of false arrest and assault; dismissed with prejudice claims against City Manager Sculley and SAPD Chief McManus; and dismissed without prejudice plaintiff's claims against UHS, VIA, and Bexar County defendants as unrelated to his claims against the City and involving different facts or legal issues such that joinder was not proper.[27]   On March 4, 2011, the Court granted the City's motion for summary judgment; granted in part SAPD Officers Brown and Garcia's motion for summary judgment, dismissing all claims against Officer Brown and all claims against Officer Garcia except for plaintiff's claims against Officer Garcia for violations of the Fourth Amendment related to the seizure/search/arrest on December 6, 2007; and appointed an attorney for Uzomba for his remaining claim against Officer Garcia.[28]   On January 30, 2012, plaintiff filed a stipulation of

[26]  Uzomba v. City of San Antonio, et al., SA-08-CA-416-XR, docket no. 14.

[27]  Uzomba v. City of San Antonio, et al., SA-08-CA-416-XR, docket no. 16.

[28]  SA-08-CA-416-XR, docket no. 98 at 49.

9

dismissal.[29]  Plaintiff makes allegations in his proposed complaint that he was retaliated against based on a settlement;[30] the docket sheets in SA-08-416-XR do not make it clear that the case was dismissed by a settlement; as discussed, another of plaintiff's cases was dismissed on January 30, 2012 based on a settlement conference that occurred in November 2011.

On or about January 8, 2009, plaintiff initiated suit in <u>Uzomba v. Bexar County Sheriff's Department, et al.,</u> SA-09-CA-20-XR.  Plaintiff's amended complaint alleged, among other things, that Officer H. Adams assaulted plaintiff on September 15, 2008, while plaintiff was handcuffed and an inmate at BCADC.[31]   On June 26, 2009, the Court ordered service of Uzomba's amended complaint on Bexar County Officer H. Adams for the alleged assault on September 15, 2008; dismissed with prejudice claims against other Bexar County defendants, as vague, conclusory, or not stating a claim; and dismissed without prejudice the claims against VIA and UHS as unrelated to his claims against the Bexar County defendants and involving different facts or legal issues such that joinder was not proper.[32]  On November 22, 2011, plaintiff filed a stipulation of dismissal of his claims following a mediated settlement conference in which the case settled and on January 30, 2012, plaintiff's case was dismissed.[33]

On or about June 30, 2008, plaintiff initiated suit in both <u>Uzomba v. UHS, et al.,</u> SA-10-CA-553-XR.  Plaintiff's proposed original complaint asserted claims against UHS, VIA, the medical

---

[29]  SA-08-CA-416-XR, docket no. 114.

[30]  Docket no. 4 at 1.

[31]  <u>Uzomba v. Bexar County, et al.</u>, SA-09-CA-20-XR, docket no. 7.

[32]  SA-09-CA-20-XR, docket no. 9.

[33]  SA-09-CA-20-XR, docket nos. 43, 46-51.

director at BCADC, and a UHS employee, nurse and physician based on incidents occurring on and after March 21, 2007.  In sum, plaintiff alleged that on March 21, 2007, while plaintiff was riding a VIA bus, VIA police "unlawfully arrested . . . and/or kidnapped" plaintiff from the VIA bus and transported him to UHS where he was treated by defendant Dr. Samuel G. Morale and a female nurse whose name is not known to plaintiff and their treatments injured plaintiff.[34]  Approximately one year later, on April 11, 2008, plaintiff went to a UHS facility for treatment "after being severely stabbed" and defendant nurse Warren Curling conspired with SAPD Officer Gloria Belcher to commit an aggravated deadly assault against Uzomba and fabricate a false criminal charge against him.[35]  Later, in May 2008, plaintiff, apparently while incarcerated at the BCADC as a pretrial detainee, was not treated for his persistent cough and hypoglycemia.[36]  Plaintiff alleges he was severely assaulted by other inmates on October 28, 2008, December 21, 2008, and by a guard on September 15, 2008 and received no or inadequate medical treatment.[37]  Plaintiff alleges that on an unspecified date, defendant Linda Fotmeyer, a UHS employee at BCADC, interfered with his treatment for hypoglycemia, refused him a glucose cube, and ordered plaintiff to be dragged back to cell after he passed out.[38]  Plaintiff allegedly sent numerous grievances to Katherine McMullen, identified as the UHS Medical Director at BCADC, but she did not respond.[39]  As relief, plaintiff's

---

[34]  SA-10-CA-553-XR, docket no. 1, proposed complaint at 3.

[35]  Id. at 4.

[36]  Id.

[37]  Id.

[38]  Id.

[39]  Id.

original complaint seeks compensatory damages of $1 million, punitive damages of $2 million, and injunctive and declaratory relief that apparently would include a court order requiring the United States Department of Justice to "turn control of the University Health System and VIA Metropolitan Transit System to the federal government in order to reestablish the rule of law and respect for the constitutional rights of the people."[40]  On September 30, 2010, a magistrate judge entered a report that recommended plaintiff's motion for leave to proceed IFP be denied on the ground that certain of plaintiff's claims appeared to be time-barred and otherwise plaintiff's allegations did not state claims for relief.  Upon review, the Court accepted the report in part and rejected it in part, ruling:

> The recommendations of the Magistrate Judge are accepted in part and rejected in part.  All of Plaintiff's claims related to the March 21, 2007 incident are barred by limitations and are thus dismissed with prejudice.  All claims against Nurse Curling related to the events of April 11, 2008 are dismissed with prejudice, and all claims against UHS are dismissed without prejudice. All claims related to the denial of medical treatment for Plaintiff's cough and the assaults are dismissed without prejudice.  However, Plaintiff's claims against UHS and Fotmeyer related to the failure to treat his hypoglycemia shall be allowed to proceed.  Accordingly, Plaintiff's motion for leave to proceed in forma pauperis (docket no. 1) is GRANTED.[41]

Following service on UHS and Fotmeyer, on December 27, 2011, the Court granted defendants' motion for summary judgment and plaintiff's claims were dismissed.[42]

Also on or about June 30, 2008, plaintiff initiated suit in Uzomba v. Susan Reed and Assistants, SA-10-CA-554-XR.  Plaintiff's amended complaint alleged, in sum, that he was wrongfully arrested on April 11, 2008; wrongfully charged with the offense of burglary of a habitation; and wrongfully held in custody at BCADC in lieu of posting bond from April 11, 2008

---

[40]  Id. at 5-6.

[41]  SA-10-CA-553-XR, docket no. 9 at 18.

[42]  SA-10-CA-553-XR, docket nos. 76, 77.

until September 21, 2008, when the charge was dismissed.[43]  On September 30, 2010, a magistrate

judge issued a report recommending that plaintiff's motion for leave to proceed IFP be denied for

the reason that plaintiff had not alleged a non-frivolous claim upon which relief may be granted.[44]

On April 13, 2011, the Court denied plaintiff's motion for leave to proceed IFP.[45]

On December 13, 2012, plaintiff initiated suit in Uzomba v. VIA, et al., SA-12-CA-1175-XR.

Plaintiff sought to assert claims against VIA, a named VIA police officer, other unknown VIA police

officers, and the unnamed VIA bus driver for bus 748 on April 29, 2012.[46]  The Court summarized

plaintiff's proffered claims as follows:

> Plaintiff contends he was on a VIA bus on July 4, 2011.  VIA police sergeant
> Gutierrez boarded the bus, grabbed Plaintiff slammed his face onto a seat, and
> ordered Plaintiff off the bus.  When Plaintiff exited the bus, Gutierrez grabbed him,
> slammed his face onto a flower bed, handcuffed him, kneed him, and searched him.
> Gutierrez slammed Plaintiff against a wall, injuring Plaintiff's nose, lips, ribs, and
> teeth.  Gutierrez kneed Plaintiff and said he was going to break Plaintiff's back.
> Gutierrez slammed Plaintiff onto the hood of the patrol car and held Plaintiff's face
> on the hood.  Plaintiff asserts he was seriously injured and he could not walk for
> more than two days. Plaintiff also alleges that on April 29, 2012, he was on VIA bus
> #748.  The driver left the bus, and the bus rolled and slammed into the back of
> another bus, injuring Plaintiff's cheeks, knee, legs, and teeth.  He states he spent three
> days in the hospital.[47]

On February 4, 2013, the Court denied plaintiff's motion to proceed IFP, noting that plaintiff had

at least three prior civil actions that were dismissed for failure to state a claim or as frivolous such

that he was prohibited by § 1915(g) from proceeding IFP unless he was currently under imminent

---

[43]  Uzomba v. Susan Reed and Assistants, SA-10-CA-554-XR, docket no. 4.

[44]  SA-10-CA-554-XR, docket no. 5.

[45]  SA-10-CA-554-XR, docket no. 10.

[46]  SA-12-CA-1175-XR, docket no. 2.

[47]  SA-12-CA-1175-XR, docket no. 3 at 1.

danger of serious physical injury, and plaintiff had not demonstrated he was under imminent danger of serious physical injury from defendants.[48]

## II.  ISSUE

Whether plaintiff should be denied leave to proceed IFP pursuant to 28 U.S.C. § 1915(e) because plaintiff has failed to present a non-frivolous federal claim against the proposed defendants.

## III.  STANDARDS

### A.     Section 1915

Assuming that plaintiff does meet the financial prerequisites to proceed IFP, plaintiff must also establish that he has raised a non-frivolous issue.  The applicable standard is found in 28 U.S.C. § 1915(e)(2):

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that –
>
> (A)   the allegation of poverty is untrue; or
> (B)   the action or appeal –
>
> > (i)    is frivolous or malicious;
> > (ii)   fails to state a claim on which relief may be granted; or
> > (iii)  seeks monetary relief against a defendant who is immune from such relief.

Title 28, United States Code, § 1915(e) accords courts not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the power to pierce the veil of plaintiff's allegations and dismiss those claims whose factual contentions are clearly baseless.[49]  In an action

---

[48]  SA-12-CA-1175-XR, id. at 2.

[49]  See Denton v. Hernandez, 504 U.S. 25, 31-32, 112 S.Ct. 1728, 1733 (1992); Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 1833 (1989).  The Prison Litigation Reform Act of 1996 moved the relevant statutory provision addressing dismissal for frivolousness from former subsection (d) of § 1915 to new subsection (e)(2)(B) and expanded the scope of that statute to expressly authorize dismissals of lawsuits as frivolous regardless of whether a filing fee or any

filed IFP, a court may raise *sua sponte* the issue of whether an action is malicious or frivolous under § 1915(e).[50]  Dismissal of a claim as frivolous under § 1915(e) is permissible when the claim lacks an arguable basis either in law or in fact.[51]  A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory.[52]  A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless.[53]  Typical examples of claims which can be dismissed pursuant to § 1915(e), or its predecessor, § 1915(d), include: (1) claims against which it is clear that the defendants are immune from suit,[54] (2) claims of infringement of a legal interest that clearly does not exist,[55] and

---

portion thereof had been paid.  See Jackson v. Stinnett, 102 F.3d 132, 136-37 (5th Cir. 1996).  If the Court has the authority to dismiss a non-prisoner case as frivolous once it has been filed, then the Court has the inherent authority in a non-prisoner case to deny leave to proceed in forma pauperis to preclude the filing of a frivolous complaint or claim.

[50]  See Neitzke v. Williams, 490 U.S. at 327, 109 S.Ct. at 1833.  See also Green v. McKaskle, 788 F.2d 116, 119-20 (5th Cir. 1986) ("A district court may dismiss an IFP proceeding brought by a prisoner for frivolity or maliciousness at any time before or after service of process and before or after the defendant's answer.").

[51]  See Neitzke v. Williams, 490 U.S. at 325, 109 S.Ct. at 1831; Ruiz v. United States, 160, F.3d 273, 274 (5th Cir. 1998); Gonzales v. Wyatt, 157 F.3d 1016, 1019 (5th Cir. 1998); Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997).

[52]  See Talib v. Gilley, 138 F.3d 211, 213 (5th Cir. 1998).

[53]  See Denton v. Hernandez, 504 U.S. at 32-33, 112 S.Ct. at 1733-34.

[54]  See Neitzke v. Williams, 490 U.S. at 327, 109 S.Ct. at 1833. See also Krueger v. Reimer, 66 F.3d 75, 76-77 (5th Cir. 1995); Boyd v. Biggers, 31 F.3d 279, 284-85 (5th Cir. 1994) (both upholding the dismissal as frivolous of civil rights lawsuits on the grounds that the defendants were entitled to absolute judicial and prosecutorial immunity).

[55]  See Neitzke v. Williams, 490 U.S. at 327, 109 S.Ct. at 1833.

(3) claims which are barred by limitations.[56]

A case is not frivolous simply because it fails to state a claim.[57]  But, if the claim has no arguable basis in law or fact, the complaint can be dismissed under § 1915(e).[58]  "A complaint is legally frivolous if it is premised on an 'undisputably meritless legal theory.'"[59]  An IFP complaint that recites bare legal conclusions, with no suggestion of supporting facts, or that postulates facts of an entirely fanciful nature, is a prime candidate for dismissal under § 1915(e).[60]  Furthermore, when it is clear from the face of the complaint that the claims asserted are subject to an obvious meritorious defense, such as a peremptory time bar, dismissal with prejudice is appropriate.[61]  A decision to dismiss a complaint based on frivolity is reviewed for abuse of discretion.[62]

## B.    FED. R. CIV. P. 12(b)(6)

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must state a

---

[56] See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994); Gartrell v. Gaylor, 981 F.2d 254, 259 (5th Cir. 1993); Henson-El v. Rogers, 923 F.2d 51, 53 (5th Cir.), cert. denied, 501 U.S. 1235 (1991).

[57] Neitzke v. Williams, 490 U.S. at 331, 109 S.Ct. at 1834; Booker v. Koonce, 2 F.3d 114, 115 (5th Cir. 1997); Gartrell v. Gaylor, 981 F.2d at 259; Ancar v. Sara Plasma, Inc., 964 F.2d at 468.

[58] See Gartrell v. Gaylor, 981 F.2d at 259; Parker v. Carpenter, 978 F.2d 190, 191 n.1 (5th Cir. 1992); Mayfield v. Collins, 918 F.2d 560, 561 (5th Cir. 1990).

[59] Boyd v. Biggers, 31 F.3d at 281-82, quoting Neitzke v. Williams, 490 U.S. at 327, 109 S.Ct. at 1833.

[60] See Ancar v. Sara Plasma, Inc., 964 F.2d at 468; Wesson v. Oglesby, 910 F.2d 278, 281 (5th Cir. 1990). See also Gartrell v. Gaylor, 981 F.2d at 259.

[61] See Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993).

[62] Denton, 504 U.S. at 33-34, 112 S.Ct. at 1728; Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998).  See Harper v. Showers, 174 F.3d 716, 718 n.3 (5th Cir. 1999) (dismissals for frivolity pursuant to § 1915 (e)(2)(B)(i) are reviewed for abuse of discretion and dismissals for failure to state a claim upon which relief may be granted pursuant to § 1915 (e)(2)(B)(ii) are reviewed de novo).

claim upon which relief can be granted or the complaint may be dismissed with prejudice as a matter of law.[63]  When considering a motion to dismiss for failure to state a claim, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[64]  To withstand a Rule 12(b)(6) motion, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[65]

Rule 8(a)(2) of the Federal Rules of Civil Procedure sets out the fundamental pleading standard for civil litigation and governs all claims in a civil suit, requiring "a short plain statement

---

[63]  FED. R. CIV. P. 12(b)(6).

[64]  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004); Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999); Chehardy v. Allstate Indem. Co., 552 U.S. 1182, 128 S. Ct. 1231 (2008)), cert. denied sub nom, Xavier Univ. of La. v. Travelers Cas. Prop. Co. of Am, 552 U.S. 1182, 128 S. Ct. 1230 and Chehardy v. Allstate Idem. Co., 552 U.S. 1182, 128 S. Ct. 1231 (2008).

In Katrina Canal Breaches, 495 F.3d at 205 n.10, the United States Court of Appeals for the Fifth Circuit acknowledged the United States Supreme Court's abrogation of the "no set of facts" standard for determining the adequacy of a pleading in Bell Atlantic Corp. v. Twombly, a Sherman Act case:

> We have often stated that a claim should not be dismissed under Rule 12(b)(6) unless the plaintiff would not be entitled to relief under any set of facts or any possible theory he may prove consistent with the allegations in the complaint.  See, e.g., Martin K. Eby Constr., 369 F.3d at 467 (quoting Jones, 188 F.3d at 324).  This standard derived from Conley v. Gibson, which stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957).  But recently in Bell Atlantic, the Supreme Court made clear that the Conley rule is not "the minimum standard of adequate pleading to govern a complaint's survival."  127 S.Ct. at 1968-69.

[65]  Id. at 205 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570-72, 127 S. Ct. 1955, 1974 (2007)).

17

of the claim showing that the pleader is entitled to relief."[66]  Although "heightened fact pleading of

specifics"[67] may not be adopted when not authorized by the Federal Rules of Civil Procedure,[68] the

complaint taken as a whole "must contain either direct or inferential allegations respecting all the

material elements necessary to sustain recovery under <u>some</u> viable legal theory"[69] and a plaintiff's

pleading obligation includes the twin requirements of fact-based pleading and plausibility.  More

specifically, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do."[70]  "Factual allegations must be enough to raise a right to relief above the speculative level

. . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."[71]

Although the Supreme Court in <u>Twombly</u> stressed that it did not impose a probability standard at

the pleading stage, nevertheless, the allegation of a mere possibility of relief does not satisfy the

threshold requirement of Rule 8(a)(2) that the "plain statement" of a claim include factual

---

[66]  FED. R. CIV. P. 8(a)(2).

[67]  <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. at 1974.

[68]  <u>See, e.g.</u>, Fed. R. Civ. P. 9(b) (allegations of fraud or mistake to be stated with particularity); <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506, 508, 122 S. Ct. 992 (2002) ("[A] complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a *prima facie* case of discrimination under the framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 [, 93 S. Ct. 1817, 36 L.Ed.2d 668] (1973).").

[69]  <u>Twombly</u>, 550 U.S. at 562, 127 S. Ct. at 1969 (quoting <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101, 1106 (7th Cir. 1984) (internal quotation marks omitted; emphasis and omission in original)).

[70]  <u>Twombly</u>, 550 U.S. at 555, 127 S. Ct. at 1964-65 (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944 (2007)).

[71]  <u>Id.</u> at 555, 127 S. Ct. at 1965 (as quoted in <u>Katrina Canal Breaches</u>, 495 F.3d at 205).

"allegations plausibly suggesting (not merely consistent with)" an entitlement to relief.[72]

When ruling on a motion to dismiss under Rule 12(b)(6), a court must accept as true all of the factual allegations contained in the complaint.[73]  But, a court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions," which will not defeat a Rule 12(b)(6) motion to dismiss.[74]  In Iqbal, the Court formalized a two-pronged approach to apply the underlying jurisprudential principles of Twombly.[75]  The first prong required the Court to separate factual allegations from legal conclusions.  The Court dismissed those allegations deemed to be "conclusory" on the basis that bare legal conclusions are not entitled to the privilege that all well-pleaded facts be taken as true at the motion to dismiss stage.[76]  The second prong then applied the

---

[72] Id. at 557, 127 S.Ct. at 1966.  See also Ashcroft v. Iqbal, 556 U.S. 662, 684, 129 S.Ct. 1937, 1953 (2009) (rejecting the argument that the Twombly plausibility pleading standard applied only in antitrust cases and expressly holding the standard applies "all civil actions.").

[73] Twombly, 550 U.S. at 555, 127 S.Ct. at 1965 (citing Swierkiewicz, 534 U.S. at 508 n.1, 122 S. Ct. at 996 n.1; Neitzke v. Williams, 490 U.S. 319, 326-37, 109 S.Ct. 1827, 1832 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974)).

[74] Plotkin v. IP Axess, Inc., 407 F.3d 690, 696 (5th Cir. 2005) (citing Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 361 (5th Cir. 2004)).

[75] Iqbal, 556 U.S. at 677-79, 129 S.Ct. at 1949-50.

[76] Id.  Iqbal illustrated its analysis of the first prong as follows:
We begin our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth.  Respondent pleads that petitioners "knew of, condoned, and willfully and maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." Complaint ¶ 96, App. to Pet. for Cert. 173a-174a. The complaint alleges that Ashcroft was the "principal architect" of this invidious policy, id., ¶ 10, at 157a, and that Mueller was "instrumental" in adopting and executing it, id., ¶ 11, at 157a. These bare assertions, much like the pleading of conspiracy in Twombly, amount to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim, 550 U.S., at 555, 127 S.Ct. 1955, namely, that petitioners adopted a policy " 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Feeney, 442

plausibility test to the remaining allegations.[77]  That two-pronged approach is now the standard for evaluating the plausibility of a complaint under Rule 8(a)(2).

## C.    Section 1983

Section 1983 does not create any substantive rights, but instead provides a remedy for violations of federal statutory and constitutional rights.[78]  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To state a cause of action under § 1983, a plaintiff's claim for relief must allege facts establishing that: (1) plaintiff has been deprived of a right secured by the Constitution or laws of the United States; and (2) defendant acted under color of state law.[79]  The Fifth Circuit has held that, "section

---

U.S., at 279, 99 S.Ct. 2282.  As such, the allegations are conclusory and not entitled to be assumed true. Twombly, *supra*, 550 U.S., at 554-555, 127 S.Ct. 1955.  To be clear, we do not reject these bald allegations on the ground that they are unrealistic or nonsensical.  We do not so characterize them any more than the Court in Twombly rejected the plaintiffs' express allegation of a " 'contract, combination or conspiracy to prevent competitive entry,' " id., at 551, 127 S.Ct. 1955, because it thought that claim too chimerical to be maintained.  It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.

Id. at 680-81, 129 S. Ct. at 1951.

[77]  Id. (explaining that although the Court must "take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).

[78]  LaFleur v. Texas Dep't of Health, 126 F.3d 758, 759 (5th Cir. 1997); Jackson v. City of Atlanta, Tex., 73 F.3d 60, 63 (5th Cir.), cert. denied, 519 U.S. 818, 117 S.Ct. 70 (1996).

[79]  Randolph v. Cervantes, 130 F.3d 727, 730 (5th Cir. 1997), cert. denied, 525 U.S. 822, 119 S.Ct. 65 (1998); Fyfe v. Curlee, 902 F.2d 401, 403 (5th Cir. 1990); Wong v. Stripling, 881 F.2d 200,

1983 imposes liability for violations of rights secured by the Constitution, not violations of duties of care arising out of tort law."[80]

Because, at all times relevant to his claims in this lawsuit, plaintiff was a convicted prisoner, the Eighth Amendment provides the primary source of protection for a prisoner complaining that he has been injured through the application of excessive force by jail or prison personnel.[81]  To prevail on an Eighth Amendment excessive force claim, a plaintiff must establish that force was applied not in a good faith effort to maintain or restore discipline but maliciously and sadistically to cause harm and that plaintiff suffered an injury.[82]  More specifically, plaintiff must show by a preponderance of the evidence: (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable.[83] In analyzing an Eighth Amendment claim, the court should consider: the plaintiff's injury; the need for the application of force; the relationship between the need and the amount of force used; the threat reasonably perceived by the officials; and efforts made to temper the severity of a forceful

---

202 (5th Cir. 1989).

[80]  Lynch v. Cannatella, 810 F.2d 1363, 1375 (5th Cir. 1987).

[81]  See Farmer v. Brennan, 511 U.S. 825, 831-32, 114 S.Ct. 1970, 1975-76 (1994) (Eighth Amendment prohibits the infliction of cruel and unusual punishment upon convicted prisoners).

[82]  See Eason v. Holt, 73 F.3d 600, 601-02 (5th Cir. 1996).  See also Hudson v. McMillian, 503 U.S. 1, 7, 112 S.Ct. 995 (1992) ("Whenever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.").

[83]  See Johnson v. Morel, 876 F.2d 477, 480 (5th Cir. 1989) (en banc ), abrogated on other grounds, Harper v. Harris County, Texas, 21 F.3d 597 (5th Cir. 1994); see also Ikerd v. Blair, 101 F.3d 430, 433-34 (5th Cir. 1996); Davis v. O'Brien, 2000 WL 1005841 (N.D. Tex. July 14, 2000).

response.[84]

# IV.  ANALYSIS

## A.     Order to Show Cause and Heck v. Humphrey

The order to show cause required plaintiff to

> state the reason he is in the Bexar County Adult Detention Center.  Plaintiff shall
> state whether he was charged with criminal offenses relating to the incidents about
> which he complains, and, if so, the offense he was charged with, the case number and
> place of the proceeding, and the result of that proceeding (*i.e.*, whether the charges
> are still pending; whether Plaintiff was found not guilty or guilty or were the charges
> dismissed; and what was the punishment, if any).[85]

The order further informed plaintiff that in Heck v. Humphrey, the United States Supreme Court

held:

> [I]n order to recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness would render
> a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or
> sentence has been reversed on direct appeal, expunged by executive order, declared
> invalid by a state tribunal authorized to make such determination, or called into
> question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.
> A claim for damages bearing that relationship to a conviction or sentence that has not
> been so invalidated is not cognizable under § 1983.  Thus, when a [plaintiff] seeks
> damages in a § 1983 suit, the district court must consider whether a judgment in
> favor of the plaintiff would necessarily imply the invalidity of his conviction or
> sentence; if it would, the complaint must be dismissed unless the plaintiff can
> demonstrate that the conviction or sentence has already been invalidated.[86]

The order notified plaintiff that whether his "case may proceed may depend on whether there have

been criminal charges, the nature of any such charges, and the disposition of any such charges."[87]

---

[84]  Baldwin v. Stalder, 137 F.3d 836,  839 (5th Cir. 1998).

[85]  Docket no. 3 at 6.

[86]  Id. (citation omitted).

[87]  Id.

Plaintiff's response to the order to show cause does not provide the requested information about the reason for his incarceration at the time he initiated this suit. Accordingly, plaintiff's motion for leave to proceed IFP is **denied** on the ground plaintiff has not complied with a Court order to provide information to show his proposed claims are not barred by <u>Heck</u>. Alternatively, plaintiff's motion for leave to proceed IFP is **denied** with respect to any claim for which plaintiff seeks an award of damages because plaintiff has not provided information in response to the order to show cause sufficient to show his proposed claims are not barred by <u>Heck</u>.

**B.      Requests for Injunctive Relief**

Plaintiff's original complaint asks for "injunctive relief to stop retaliation, request federal to look at SAPD unlawful ordinance, search and seizure, require internal affairs to [] complaints without intermediations, also investigate cover-up complaints" (<u>sic</u>).[88] As discussed below, to the extent plaintiff has alleged a comprehensible request for injunctive relief, plaintiff's requests for injunctive relief is **denied** based on the following grounds: plaintiff has not stated a non-frivolous claim for retaliation upon which relief may be granted; plaintiff has not provided a particularized statement of facts to show "SAPD" has enacted an "unlawful ordinance;" plaintiff has no "constitutional right to have grievances or complaints investigated" (as plaintiff was warned in the order to show cause);[89] plaintiff has not demonstrated he has named as a defendant a party from whom/which each aspect of the injunctive relief plaintiff seeks may be awarded; and plaintiff has not otherwise provided a particularized statement of facts to show likelihood of success on the

---

[88]   Proposed complaint at 6.

[89]   Docket no. 5 at 8 (citing <u>Geiger v. Jowers</u>, 404 F.3d 371, 374 (5th Cir. 2005)).

merits, irreparable harm, a balance of the hardships, and the public interest support injunctive relief.[90]

## C.      IFP Status

To the extent plaintiff's claims are not dismissed based on plaintiff's failure to respond to the directive to provide information on the reason for his then-current incarceration, charges, and their disposition and plaintiff's failure to allege a non-frivolous claim for injunctive relief, the Court must express its concern about whether plaintiff is financially qualified to proceed IFP.  On April 19, 2013, plaintiff filed a change of address form to indicate he was no longer residing at the Bexar County Adult Detention Center.[91]  Plaintiff has not provided any updated financial information to demonstrate he continues to remain unable to pay the filing fee in this case.

---

[90]   Because plaintiff has not complied with the Court's order to show cause, has not demonstrated his proposed claims for money damages are not barred by Heck, and has not provided a particularized statement of facts to show he would be entitled to an award of injunctive relief,  the Court does not need to address any other aspect of plaintiff's proposed complaint.  Although courts do liberally construe pro se pleadings and do exercise extra vigilance in determining the sufficiency of claims, even for a pro se litigant the Court is not required to comb through submissions in this and previously filed cases—as Uzomba appears to suggest—to find arguments to avoid dismissal.  See docket no. 4 at 4 ("Plaintiff will ask the Court's permission to please reference [] Plaintiff's complaint against . . . [UHS] . . . and supplement to motion for reconsideration dismissal judgment (§ III), for full details on how Plaintiff is under imminent danger of serious physical injury.").  See also Uzomba v. UHS, et al., SA-13-CA-177-H, docket no. 3 (March 15, 2013 order denying plaintiff's motion for leave to proceed IFP on a proposed civil complaint against UHS and three individuals for failure to state a claim for relief).  Plaintiff's failure to provide the requested information about the Heck bar and his failure to state a cognizable claim for injunctive relief allow for a dispositive ruling on each of plaintiff's proposed claims.

Nevertheless, certain following portions of this ruling address several other issues presented by Uzomba's submissions that support dismissal, in whole or in part.  The Court's order to show cause afforded plaintiff express notice that the claims proposed in the instant lawsuit appeared to be frivolous and afforded plaintiff an opportunity to cure.  Plaintiff has not provided sufficient information to allow the Court to conclude he has stated a non-frivolous federal claim upon which relief may be granted.

[91]   Docket no. 5.

**D.      Allegations About Matters Presented in Other Suits**

When responding to the order to show cause, plaintiff refers to incidents that appear to be the very incidents at issue in suits Uzomba previously filed in this Court.  Uzomba apparently refers to them as support for his alleged claim that certain of the defendants retaliated against him because of prior suits plaintiff filed in this Court and/or prior interactions among the individuals. To the extent Uzomba may be attempting to assert as claims in this case matters that were already raised in prior suits, he has not demonstrated why the claims are not barred.  In sum, Uzomba's motion for leave to proceed IFP is **denied** to the extent Uzomba seeks to re-litigate any matter presented in a prior lawsuit.

**E.      Unspecified Dates and Unspecified Actors**

Plaintiff fails to specify the date on which many of the events about which he complains occurred.  For example, plaintiff's response to the order to show cause asserts it was "very embarrassing" when unspecified police officers allegedly "drive up behind Plaintiff and turn the siren on or blow the loud, strange police horn" allegedly to retaliate against plaintiff for his prior suits.[92]  Plaintiff cites no authority to show embarrassment is sufficient to demonstrate a violation of any constitutional right or otherwise is sufficient to state a civil rights claim for retaliation. Further, plaintiff's response to the order to show cause does not specify when the conduct occurred. Plaintiff's response to the order to show cause also alleges unspecified police officers stopped plaintiff when he was driving his vehicle, stripped searched plaintiff, and "destroyed" the interior of his BMW vehicle, allegedly in retaliation for his prior lawsuits, but his response to the order to

---

[92]   Docket no. 4 at 6.

show cause does not state when the conduct occurred.[93]   There are other averments in plaintiff's proposed complaint for which plaintiff, either in the proposed complaint or response to the order to show cause, provides no allegations to fix the events in time to demonstrate they are not time-barred. Relatedly, some of plaintiff's allegations are so imprecise that it is not possible to tell which John Doe or named defendant was allegedly involved.

The statute of limitations in a § 1983 suit is that provided by the state for personal-injury torts.[94]   In Texas, the applicable limitations period for a § 1983 cause of action is two years.[95]   As plaintiff filed this lawsuit on or about December 13, 2012, to satisfy the two-year limitations period, the injury-causing conduct at issue must have accrued on or after December 13, 2010.   Generally, accrual occurs "when plaintiff has a 'complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'"[96]

The Court has carefully reviewed plaintiff's proposed complaint and response to the order to show cause and there are numerous examples of plaintiff failing to provide a particularized statement of facts to show when the alleged conduct occurred or otherwise show the claim is not time-barred.   There are also instances in which plaintiff has failed to specify which John Doe or named defendant is allegedly involved in what actions or omissions.   The Court permissibly may set

---

[93]   Id.   Plaintiff does later state "Officer Smith got Guzman to retaliate against Plaintiff August 29, 2012," id., but plaintiff makes no other allegations about Guzman in this portion of this response to the order to show cause to provide a particularized statement of facts of the alleged retaliation.

[94]   Wallace v. Kato, 549 U.S. 384, 387, 127 S.Ct. 1091, 1094 (2007).

[95]   Gonzales v. Wyatt, 157 F.3d 1016, 1020 (5th Cir. 1998) (citations omitted).

[96]   Wallace, 549 U.S. at 388, 127 S.Ct. at 1095 (quoting Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201, 188 S.Ct. 542, 549 (1997)).

aside statements of "bare legal conclusions, with no suggestion of supporting facts."[97]   Accordingly, plaintiff's motion for leave to proceed IFP is **denied** to the extent plaintiff seeks to proceed on purported claims for which plaintiff has failed to provide sufficient information to show the claim is not time-barred or identify which John Doe or named defendant is allegedly involved in actions or omissions.

**F.   Civil Rights Retaliation**

To state a civil rights retaliation claim, plaintiff must allege (1) a specific constitutional right, (2) defendant's intent to retaliate against the plaintiff for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.[98]   Causation means that "but for" the retaliatory motive, the adverse action would not have occurred.[99]

Plaintiff's complaint and response contain conclusory assertions that officers retaliated against him because he was successful in a prior lawsuit against the City and Ramos.   Under plaintiff's allegations it would appear that any police conduct involving plaintiff, in plaintiff's assessment, shows retaliation.   Indeed, based on the conclusory, speculative assertions of plaintiff, it could be concluded that plaintiff's suit is retaliation against the officers, not the other way around. Nevertheless, even under the liberal pleading standard applicable to pro se complaints, plaintiff has not identified a specific constitutional right that a defendant has intended to retaliate against plaintiff for exercising or provided facts to show the "but for" causation standard may be able to be satisfied.

---

[97]   Wesson v. Oglesby, 910 F.2d 278, 281 (5th Cir. 1990).   See also Wilson v. Budney, 976 F. 2d 957, 958 (5th Cir. 1992); Moody v. Baker, 857 F.2d 256, 257 (5th Cir. 1988) (conclusory complaints may be dismissed as frivolous).

[98]   Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir.1999).

[99]   Johnson v. Rodriguez, 10 F.3d 299, 310 (5th Cir. 1997).

In sum, plaintiff's motion for leave to proceed IFP is **denied** to the extent plaintiff seeks to proceed on his claims for retaliation on the ground plaintiff has failed to provide sufficient information to state a claim upon which relief may be granted.

## G.   Claims Against Chief McManus

The Court's order to show cause informed plaintiff that to state a § 1983 claim, plaintiff must allege and prove a defendant was personally involved in actions that violated one of plaintiff's federal constitutional rights or was responsible for the policy or custom giving rise to the constitutional deprivation.[100]   Plaintiff was informed the allegations regarding Chief McManus in the proposed complaint were "conclusory" and did not include a statement of "facts to show Chief McManus was personally responsible for the policy or custom giving rise to constitutional deprivations."[101]   Plaintiff's references to Chief McManus in the response to the order to show cause are equally conclusory.   Other than insisting it was the Chief who "issued [] illegal and unconstitutional ordinance that give SAPD officer [the] right to violate citizens like Plaintiff Fourth Amendment right to be free of unreasonable searches and seizures,"[102] and various other SAPD officers and "the Chief's spokesman" (who is not otherwise identified) "all stated that [the] Chief installed the said unconstitutional ordinance to combat drug trafficking and crime,"[103] plaintiff does not provide a copy of the "ordinance" or otherwise quote its terms, provide authority to show any City of San Antonio ordinance may be enacted by the City's Chief of Police, or provide sufficient

---

[100]  Docket no. 3 at 8 (citations omitted).

[101]  Id.

[102]  Docket no. 4 at 4.

[103]  Id.

28

factual allegations to make the claim comprehensible to the Court.  In sum, to the extent plaintiff seeks leave to proceed IFP on any claim against Chief McManus, the motion is **denied** because plaintiff has not stated a claim upon which relief may be granted.

### H.    Claims against "SAPD Internal Affairs"

Plaintiff's proposed complaint seeks to assert civil rights claim(s) against "SAPD Internal Affairs," apparently for failure to investigate.  The order to show cause notified plaintiff that he had not "alleged facts that would show Defendants McManus, Rawson, and the unknown Lieutenant from internal affairs violated Plaintiff's constitutional rights for failing to investigate Plaintiff's complaints."[104]   In his response to the order to show cause, in addition to other generalized, conclusory and, in part, incomprehensible allegations, plaintiff appears to state that, at some unspecified time he was in Rawson's office and "Rawson was going to take and write the complaint, but called the Eastside substation, upon hanging up the phone Rawson became irate and ordered Plaintiff out of his office."[105]   Plaintiff provides no further factual information about the date of his meeting with Rawson, the nature of the "complaint," or why his "complaint" was actually properly within the scope of the SAPD internal affairs office.

In sum, to the extent plaintiff seeks leave to proceed IFP on any claim against SAPD Internal Affairs, the motion should be **denied** because plaintiff has not stated a claim upon which relief may be granted.

---

[104]   Docket no. 3 at 8.

[105]   Docket no. 4 at 5.

## I.   Claims Against the City; Claim for Personal Injury Caused by Uneven Manhole in City Street

Plaintiff also names the City as a defendant in the original complaint and asserts a claim based on an allegedly uneven manhole cover in a city street.  More specifically, plaintiff's proposed complaint asserts the City has been

> deliberately indifferent to water valve manholes conditions and citizens like Plaintiff step into manhole a suffer serious injuries, large medical bills and go without work. In March 2012 Place stepped into such manholes suffered serious injuries, medial bill, under Doctor's care and treatment for three (3) months anc could not wear shoes, no work.  Plaintiff called San Antonio Water System (SAWS), the claim office said it is common problem, they about it, their SAWS workers do not always lock the locks properly (because poor training) and people steal the covers.  SAWS sends victims claim forms but are generally denied like Plaintiff's was denied.  I was simply told to file lawsuit.  Since incident Plaintiff discover one out of five citizens suffer these injuries but don't know how to file law suit and most lawyers as Plaintiff discovered will not chance the case and represent victims. (sic)[106]

The order to show cause advised plaintiff that the proposed "claim about manhole covers fails to allege how the city violated his constitutional rights."[107]  Plaintiff's response to the order to show cause alleges, among other things, in "March of 2012," plaintiff

> stepped into a uneven manhole located by the sidewalk, obscured by grass and weed (knee high).  The manhole appear defective and/or improperly installed, and never inspected in many years.  The whole shell casing uprooted from the ground attached to Plaintiff's right ankle, and came up cause Plaintiff to fall onto Nolan Street. (sic)[108]

Plaintiff alleges he was "seriously injured, required several hospital, clinic visits, treatments, two to three times a week for three and ½ months, Plaintiff not ear shoe on his right foot, and could not

---

[106]   Proposed complaint at 11.

[107]   Docket no. 3 at 9.

[108]   Docket no. 4 at 8.

work, accumulated large medical bills and expenses."[109]   Plaintiff otherwise does not allege the amount of his bills and expenses, the nature of his injury, or explain why his alleged personal injury claim is actionable as a civil rights violation in this Court.[110]   In sum, to the extent plaintiff seeks leave to proceed IFP on his claim against the City based on a defective manhole cover, the motion is **denied** as plaintiff has not stated a non-frivolous federal civil rights claim for relief in this Court.

## V.  CONCLUSION

After careful review, plaintiff's motion for leave to proceed in forma pauperis[111] is **DENIED** for the reasons stated in this ruling and plaintiff's case is **DISMISSED**.

It is so ORDERED.

SIGNED this 6th day of May, 2013.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[109]   Id.

[110]   In his response to the order to show cause, under the heading "manhole," plaintiff also prevents approximately one page of allegations about alleged inadequate medical care or denial of medical care occurring on or about August 25, 2012, when plaintiff was arrested (again, plaintiff does not specify the offense for which he was arrested, the charge(s) or the disposition of the criminal case). Id. at 9-10.  Plaintiff makes reference to his request for a walking cane that, apparently, was provided to him. Id.  These appear to be the same factual allegations, at least in part, that were presented to the Court in plaintiff's now-dismissed proposed complaint filed in Uzomba v. UHS, et al., SA-13-CA-177-H.

[111]   Docket no. 1.